**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Agility Public Warehousing Company K.S.C., )<br>a/k/a Agility or The Public Warehousing Company )<br>Sulaibia, P.O. Box 25418 )<br>Safat 13115 )<br>State of Kuwait, )<br>                                                                  )<br>                                     Plaintiff,   )<br>                                                                  )<br>                       v.                                    )<br>                                                                  )<br>National Security Agency                       )<br>9800 Savage Road                                    )<br>Fort Meade, MD 20755,                         )<br>                                                                  )<br>                                    Defendant.  )<br>                                                                  ) | Civil Action No. _____ |

**COMPLAINT FOR INJUNCTIVE RELIEF**

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Plaintiff Agility Public Warehousing Company K.S.C., a/k/a Agility or The Public Warehousing Company (hereinafter, "PWC"), seeks injunctive and other appropriate relief for the processing and release of agency records requested by PWC from Defendant National Security Agency ("NSA" or the "Agency").

**Jurisdiction and Venue**

2. This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

**Parties**

3.      Plaintiff PWC is a Kuwaiti logistics company that received a series of contracts from the Defense Logistics Agency ("DLA") of the United States Government to provide food to U.S. troops stationed in Iraq, Kuwait, Qatar, and Jordan from 2003 through 2010.  PWC's track record of performance was superb, filling orders placed by military customers at a rate of over 99%, and obtaining numerous awards, accolades, and contract extensions in the process.  In recognition of its outstanding performance and service, PWC received many awards from the U.S. Government, including the DLA's New Contractor of the Year Award in 2004, the Defense Supply Center Philadelphia's Outstanding Customer Service Award for 2004 and 2005, Surface Deployment and Distribution Command's Quality Award for Outstanding Service in 2005, the DLA's Outstanding Readiness Support Award in 2005 and 2006, the Institute for Defense and Government Advancement's award for Outstanding Industry Leader in Military Logistics in 2006, and Worldwide Business Research's award for Best Logistics Strategy, Subsistence Prime Vendor Program, in 2007.  PWC is currently a party in various criminal and civil litigations in the United States, which it is vigorously defending.

4.      Defendant NSA is a component of the Executive Branch of the United States Government.  Its mission involves collecting, processing, analyzing, producing, and disseminating signals intelligence information and data for foreign intelligence and counterintelligence purposes.  The NSA is an "agency" within the meaning of 5 U.S.C. § 552(f).

**The Agency's Surveillance Programs and PWC's Electronic Communications**

5.      The Agency operates surveillance programs that focus on telephone records, email, internet searches, and other electronically transmitted information.  Many of these

surveillance programs were initially brought to light by articles published in *The Guardian* in June 2013.

6. During the months following the initial articles in *The Guardian*, additional details about the breadth of the Agency's surveillance programs have emerged. For instance, it has been reported that the Agency's surveillance of email included the copying and review of "most e-mails and other text-based communications that cross the [United States] border." Charlie Savage, *N.S.A. Said to Search Content of Messages to and From U.S.*, N.Y. Times, Aug. 8, 2013. *See also* Siobhan Gorman & Jennifer Valentino-Devries, *New Details Show Broader NSA Surveillance Reach*, Wall St. J., Aug. 20, 2013 ("The system has the capacity to reach roughly 75% of all U.S. Internet traffic in the hunt for foreign intelligence, including a wide array of communications by foreigners and Americans.").

7. One specific Agency surveillance program is known as XKeyscore, which allows analysts to search with no prior authorization through vast databases containing emails, online chats and the browsing histories of millions of individuals.

8. It has also recently come to light that the Agency may have been intercepting or receiving privileged communications between U.S. lawyers and their foreign clients. One article reports that the Agency's Australian counterpart likely intercepted privileged communications between a U.S. law firm (believed to be Mayer Brown LLP) and its client, the Government of Indonesia, concerning sensitive trade talks between Indonesia and the United States, and that it may have shared some of this information with the Agency. *See* James Risen & Laura Poitras, *Spying by N.S.A. Ally Entangled U.S. Law Firm*, N.Y. Times, Feb. 15, 2014.

9. Despite the recent uptick in interest surrounding the Agency's surveillance programs, robust Agency email surveillance programs appear to have existed since at least 2002.

*See* James Risen & Erich Lichtblau, *Bush Lets U.S. Spy on Callers Without Courts*, N.Y. Times, Dec. 16, 2005.

10. To conduct its business and manage its affairs, PWC routinely employs multiple methods of electronic communication, including email and telephone. PWC's electronic communications regularly cross the United States border. In particular, PWC makes extensive use of email and other electronic means to conduct privileged communications with its attorneys in the United States regarding its various pending litigation matters.

**PWC's FOIA Requests and the Agency's Failure to Adequately Respond in a Timely Manner**

11. By letter sent to the Agency on December 19, 2013, PWC requested, under FOIA, copies of various records related to PWC and agreed to pay all reasonable search and reproduction fees that might be incurred in processing its requests. (Ex. 1, R. Marmaro 12/19/13 letter.) Specifically, PWC requested the following records for the time period of May 28, 2003, through the present:

- All email, letter, telephonic, or other communications, or recordings of such communications, by PWC or its directors, officers, or employees. This request includes, without limitation, any such communications in the NSA's possession, including without limitation any communications that were intercepted by the NSA (including, without limitation, through the NSA's XKeyscore program), any other U.S. or foreign government agency, or any U.S. or foreign communications providers (such as Google, Yahoo, Verizon or AT&T).

- The names of any U.S. or foreign communications providers that intercepted email, letter, telephonic, and/or other communications by PWC or its directors, officers, or employees.

- Any and all documents related to the following contracts between PWC and the Defense Supply Center Philadelphia: Contract SP0300-03-D-3061 (awarded on May 28, 2003); Contract SPM300-05-D-3119 (awarded on February 16, 2005); and Contract SPM300-05-D-3128 (awarded on July 7, 2005).

- Any and all documents related to the following lawsuits: *United States ex rel. Kamal Mustafa Al-Sultan v. The Public Warehousing Company, K.S.C.*, Case No.

1:05-CV-2968 (N.D. Ga. 2005); and *United States v. The Public Warehousing Co. K.S.C.*, Case No. 1:09-CR-490-TWT/AJB (N.D. Ga. 2009).

- All email, letter, telephonic, or other communications, or recordings of such communications, between the NSA and any other investigative or law enforcement agency, including the Department of Justice ("DOJ") and the Federal Bureau of Investigations ("FBI"), regarding PWC or any of its directors, officers, or employees.

- Any memoranda, meeting minutes, reports, manuals, or other documents discussing or pertaining to any meetings among employees or contractors of any or all of the DOJ, the Office of the Director of National Intelligence, and the NSA, which mention or relate to PWC.

- Any memoranda, meeting minutes, reports, manuals, or other documents discussing or pertaining to any meetings between employees or contractors of the NSA and employees or contractors of other investigative or law enforcement agencies, including but not limited to the FBI, the Central Intelligence Agency, the Department of Defense, and the Department of Homeland Security, relating to or mentioning PWC.

(*Id.* at 1-2.)

12.  On January 6, 2014, the Agency emailed PWC's counsel to acknowledge that it had received PWC's December 19, 2013 letter, and to request some additional information and clarification regarding PWC's requests. (Ex. 2, C. Blacker 1/6/14 email.)

13.  On January 29, 2014, PWC's counsel responded to the Agency's January 6, 2014 email providing the additional information and clarifications requested. (Ex. 3, R. Marmaro 1/29/14 email.)

14.  By letter dated January 31, 2014, the Agency acknowledged that it had received PWC's "initial request dated 19 December 2013, and clarification email dated 29 January 2014." (Ex. 4, Andrew F. 1/31/14 letter, at 2.) Although the January 31, 2014 letter assigned a case number to PWC's request, it failed to respond to PWC's requests in the manner required by the FOIA. (*Id.*) The Agency sent no further response to PWC before February 26, 2014, which was its statutory deadline under FOIA for properly responding to PWC's requests.

15. On March 14, 2014, PWC sent the Agency a letter inquiring about the status of its requests. (Ex. 5, R. Marmaro 3/14/14 letter.) PWC noted that the Agency had failed to properly respond to its FOIA requests within the 20 business days required by the FOIA's time limit provision. (*Id.* at 2.) Despite the Agency's failure to properly respond by the statutory deadline, PWC indicated that it was willing, as a reasonable accommodation, to allow the Agency twenty additional business days—until April 11, 2014—to provide a statutorily compliant response to PWC's requests.

16. Having not heard back from the Agency by April 11, PWC sent a letter to the Agency's FOIA Appeal Authority on April 15, 2014, stating that because the Agency had failed to provide a proper response to PWC's FOIA requests within the statutory time limits—or even within the extended time period that PWC had provided—PWC now sought an administrative appeal based on the Agency's constructive denial of its FOIA requests. (Ex. 6, R. Marmaro 4/15/14 letter, at 2.)

17. By letter dated April 25, 2014, the Agency acknowledged receipt of PWC's request for an appeal, but did not make any determination regarding the appeal. (Ex. 7, Brian C. 4/25/14 letter.) Rather, the Agency simply stated that "[w]e will begin to process your appeal and will respond to you again as soon as we are able." (*Id.*)

18. On May 6, 2014, PWC responded to the Agency's letter, requesting that the Agency comply with FOIA's time period requirement to make a determination to PWC's appeal within 20 business days of the appeal's submission—or by May 14, 2014. (Ex. 8, R. Marmaro 5/6/14 letter.)

19. To date, PWC has not received any further communication from the Agency regarding its appeal, even though the May 14, 2014 statutory deadline for the Agency to make a determination on the appeal has passed.

20. The Agency has violated the applicable statutory time limits for issuing a proper response to PWC's FOIA requests.

21. PWC has exhausted the applicable administrative remedies.

22. The Agency has wrongfully withheld the requested records from PWC.

## CAUSE OF ACTION

### Violation of the Freedom of Information Act

23. PWC repeats and realleges paragraphs 1-22.

24. The Agency has wrongfully withheld agency records requested by PWC.

25. PWC has exhausted the applicable administrative remedies with respect to the Agency's wrongful withholding of the requested records.

26. PWC is entitled to injunctive relief with respect to the release and disclosure of the requested records.

## Requested Relief

WHEREFORE, PWC prays that this Court:

A. order the Agency to disclose the requested records in their entirety and make copies available to PWC;

B. provide for expeditious proceedings in this action;

    C.      award PWC its costs and reasonable attorneys' fees incurred in this action; and

    D.      grant such other relief as the Court may deem just and proper.

June 4, 2014    Respectfully submitted,

    /s/  David Leland
DAVID LELAND (D.C. Bar No. 484096)
ALLON KEDEM (D.C. Bar No. 1009039) (*pro hac vice* application forthcoming)
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Ave., N.W.
Washington, D.C.  20005
Tel.: (202) 371-7000
Fax: (202) 393-5760

RICHARD MARMARO (*pro hac vice* application forthcoming)
MATTHEW E. SLOAN (*pro hac vice* application forthcoming)
KRISTIN N. TAHLER (*pro hac vice* application forthcoming)
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA  90071
Tel.: (213) 687-5000
Fax: (213) 687-5600

*Attorneys for Plaintiff Agility Public Warehousing Company K.S.C.*